**2017-2589**

# In The
# United States Court Of Appeals
## For The Federal Circuit

# REHCO LLC,

*Appellant,*

v.

# SPIN MASTER, LTD.,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
CASE NO. 1:13-cv-02245

———————

# COMBINED PETITION FOR PANEL REHEARING OR
# REHEARING EN BANC

———————

Megan J. Redmond
Eric A. Buresch
Carrie A. Bader
ERISE IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211
(913) 777-5600

*Counsel for Appellee*

## **AMENDED CERTIFICATE OF INTEREST**

Pursuant to Federal Circuit Rule 47.4, counsel for Appellees certifies the following:

1.    The full name of every party represented by me is: Spin Master, Ltd.

2.    The names of the real party in interest if the party named in the caption is not the real party in interest: None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of Spin Master, Ltd. are: Spin Master Corp.

4.    The names of all law firms and the partners and associates that have appeared for the party in the lower tribunal or are expected to appear for the party in this court:

Erise IP, P.A.: Megan J. Redmond, Carrie A. Bader, Eric A. Buresh; Fitch, Even Tabin & Flannery: Christine A. Pompa, Nicholas T. Peters, Joseph F. Marinelli

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary):  N/A

Dated: March 6, 2019                       */s/ Carrie A. Bader*
                                            Carrie A. Bader
                                            Attorney for Appellee

# **TABLE OF CONTENTS**

**Page:**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ................................................................ iii

FEDERAL CIRCUIT RULE 35(b) STATEMENT ...................................1

POINTS OF LAW OVERLOOKED BY PANEL ....................................2

INTRODUCTION .................................................................................2

ARGUMENT .........................................................................................5

      I.     PANEL REHEARING IS WARRANTED TO ADDRESS FEDERAL CIRCUIT PRECEDENT OVERLOOKED BY THE PANEL ...........................................................................5

      II.    REHEARING EN BANC IS WARRANTED TO ADDRESS THE SPLIT OPINION REGARDING INTERPRETATION OF "RELATED TO" IN RELEASE PROVISIONS .................................9

CONCLUSION .....................................................................................11

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Augustine Medical, Inc. v. Progressive Dynamics, Inc.*,
194 F.3d 1367 (Fed. Cir. 1999) ............................................................*passim*

*Carson v. American Brands, Inc.*,
450 U.S. 79, 101 S. Ct. 993 (1981) ................................................................11

*Celotex Corp. v. Edwards,*
514 U.S. 300, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) .........................1, 9

*Contra Bluebonnet Savings Bank, F.S.B. v. U.S.*,
266 F.3d 1348 (Fed. Cir. 2001) .......................................................................8

*Harley-Davidson, Inc. v. Minstar, Inc.*,
41 F.3d 341 (7th Cir. 1994) .........................................................................1, 9

*Higbee v. Sentry Insur. Co.*, |
253 F.3d 994 (7th Cir. 2001) ...........................................................................11

*Holland v. U.S.*,
74 Fed. Cl. 225 (Ct. Cl. 2006) .........................................................................8

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907 (7th Cir. 1999) ........................................................................1, 9

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374, 112 S. Ct. 2031 (1992) ..........................................................1, 9

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85, 103 S. Ct. 2890 (1983) ...........................................................1, 10

*Taidoc Tech. Corp. v. Diagnostic Devices, Inc.*,
Case No. 3:12cv636, 2013 WL 1688030 (W.D.N.C. 2013) ...........................7

*Taracorp, Inc. v. NL Indus., Inc.*,
73 F.3d 738 (7th Cir. 1996) ..........................................................................1, 9

iii

*Todd Constr., L.P. v. United States*,
    656 F.3d 1306 (Fed. Cir. 2011) .............................................................1, 9, 10

*Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*,
    587 F.3d 1375 (Fed. Cir. 2009) ............................................................1, 9, 10

*USA Satellite & Cable, Inc.v. MacNaughton*,
    Case No. 1:15-cv-6331, 2018 WL 665397 (N.D. Ill. 2018).........................11

## **FEDERAL CIRCUIT RULE 35(b) STATEMENT**

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this court, as well as the Seventh Circuit Court of Appeals: *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08, 115 S. Ct. 1493 (1995) (interpreting "related to"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84, 112 S. Ct. 2031 (1992) (interpreting "relating to"); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890 (1983) (interpreting "relates to"); *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1312-13 (Fed. Cir. 2011) (interpreting "related to"); *Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378-79 (Fed. Cir. 2009) (same); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (same); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 745-46 (7th Cir. 1996); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994).

*/s/ Carrie A. Bader*         
Attorney of Record for Spin Master, Ltd.

## POINTS OF LAW OVERLOOKED BY PANEL:

The panel's interpretation of Rehco's Release contained in the parties' 2010 Settlement Agreement overlooks contrary law from the Supreme Court and this Circuit, as cited above, as well as this Court's precedent in *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370-73 (Fed. Cir. 1999). The majority opinion's interpretation of the Release provision in this runs contrary to this precedent, and the prior decisions of the Supreme Court and this Court interpreting the phrase "related to." Because of this, parties to existing and potentially future settlement agreements including Releases using the phrase "related to," will be left with uncertainty as to the interpretation of "related to" in the context of a Release due to the lack of uniform treatment.

## INTRODUCTION

A divided panel of this Court held that the district court erred when it held that Rehco's claims for royalties on the Havoc Heli product were released under a prior settlement agreement between Rehco and Spin Master. ADD 7-9. The majority's decision cited no authority for its interpretation of "related to" and further did not address directly applicable caselaw from this Court addressed in the briefing. The result of the majority decision now casts uncertainty on any number of agreements, where parties have negotiated a release of liability "related to" claims in a pending dispute between the parties.

In coming to its conclusion, the majority reinterpreted the parties' release agreement narrowly, finding that the parties' only released claims for specific product SKUs identified in a January 2009 auditor's report, and not for claims "related to" the Audit. ADD 8-9. However, as noted by the dissent, the majority's conclusion and interpretation of the release provision and its use of the phrase "related to" contradicts the broad interpretation of that phrase reflected in the consistent precedent of the Supreme Court, this Court, as well as the Seventh Circuit, whose law is applicable to this contract dispute. ADD 16. The majority's interpretation of the release overlooks the authority cited to the panel from this Circuit.

As noted by the dissent, the majority's interpretation of Rehco's Release reads out the "related to" language entirely.  Specifically, the release states:

> Rehco hereby releases and forever discharges Spin Master . . . from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, which are related to the Audit . . . and any claims for royalties thereunder . . . which arose, existed, or could have been asserted prior to the Effective Date.

Appx1496.

 "Audit" is defined as:

> In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records related to the licenses listed below as referenced by the product SKUs identified in [the auditor's] January 2009 report ("Audit") for the selling periods of Q1 2006 through Q1 2008 ("Audit Period").

Appx1495.

3

The "licenses listed below" in the definition of the Audit included the Radio Controlled Helicopter Agreement ("Helicopter Agreement") and its amendments. Appx1495. It is undisputed that Rehco's contract claims seek royalties for sales of Spin Master's Havoc Heli product under the Helicopter Agreement. Appx2313-2315. It is further undisputed that the Havoc Heli product was released in 2006, over two years prior to the parties' settlement agreement. Appx50, Appx2318. And it is undisputed that Rehco knew about the Havoc Heli product and considered claims for royalties on that product prior to the issuance of the final audit report. Appx1395-1410, Appx2319.

The panel erred in holding that the parties did not release the Havoc Heli product from any claims of royalties because it was not specifically identified in the January 2009 audit report. ADD 9. Despite the parties' discussions of *Augustine Medical* in their briefing, the panel did not discuss that case or explain how the majority decision does not directly conflict with that decision. Here, the "related to" language in Rehco's Release, combined with the definition of the term "Audit", unambiguously includes claims for royalties related to the Helicopter Agreement which arose, existed, or could have been asserted prior to the Effective Date. Moreover, the panel's decision now casts doubt on the validity and scope of release provisions in general, where parties regularly agree to release claims "related to" claims in the litigation (i.e. asserted patents, license agreements, etc). For these reasons, Spin Master respectfully requests a rehearing limited to the contract claim.

4

# **ARGUMENT**

## I.  **PANEL REHEARING IS WARRANTED TO ADDRESS FEDERAL CIRCUIT PRECEDENT OVERLOOKED BY THE PANEL**

The majority interpreted Rehco's Release as discharging only those products identified by SKU in the January 2009 audit report. ADD 9. In doing so, the majority did not address prior precedent of the Court in *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed. Cir. 1999).  There, the Court found that similar release language released not only claims that existed on or before the date of the Settlement Agreement in that case, but also claims "*related to*" actions taken by the defendant prior to the date of the Settlement Agreement. *Id.*, at 1371.

Specifically, the *Augustine Medical* release read:

> AMI does hereby ... release and forever discharge PDI from any and all manner of action or actions ... that AMI and/or its owners ... *have, have had, or may have* against PDI upon or by reason of or relating to any acts, omissions or statements made by PDI on or before the date of this Settlement Agreement, including, but not limited to, *any and all claims that were or could have been asserted* by AMI in the [present lawsuit].... AMI covenants and agrees not to commence any action or proceeding against PDI arising out of or related to, statements *not otherwise precluded by this Settlement Agreement made after the date hereof* that are in substance repetitions of statements made by PDI prior to the date of this Settlement Agreement that were at issue in the above-referenced litigation. (Emphasis in original) *Augustine Medical*, 194 F.3d at 1369.

The Court interpreted the "related to" language and found that the plaintiff "discharged its ability to sue [the defendant], not only for claims that existed on or before the date of the Settlement Agreement, but for claims *related to* any actions

taken by [the defendant] on or before the date of the Settlement Agreement." *Id.*, at 1371. As noted by this Court, the actions taken by the defendant on or before the date of the Settlement Agreement included producing and marketing the products at issue in the later-filed patent litigation. *Id.* Thus, the plaintiff's claims for patent infringement were ***related to*** the defendant's production and marketing of the goods at issue. *Id.*

> Likewise, here, the plain language of the Release states:

> **Rehco Release.** Subject to the representations and warranties below, Rehco hereby releases and forever discharges Spin Master, its subsidiaries and any officers or directors of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, ***which are related to the Audit*** and Additional Selling Periods, and any claims for royalties thereunder (other than the Spin Master obligations under this Agreement) which arose, existed, or could have been asserted prior to the Effective Date.

Appx1496 (emphasis added). The parties defined the Audit as: "In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records ***related to the licenses listed below*** as referenced by the product SKUs identified in [the auditor's] January 2009 report ("Audit"). . . ." (emphasis added) Appx1495. The "licenses listed below" included the Helicopter Agreement and its amendments. Appx1495. It is undisputed that Spin Master sold the Havoc Heli product for two years prior to the audit, and it was further undisputed that the royalty audit included a review of royalties owed under the Helicopter Agreement.

Appx2319, Appx1460. Finally, it is undisputed that Rehco's contract claim is based on its contention that it is owed royalties on the Havoc Heli under the Helicopter Agreement. Appx2313-2315.

Under *Augustine Medical*, Rehco's claims for royalties on the Havoc Heli were ***related to*** the Audit, which, included the audit of Spin Master's royalty accounting records under certain licenses, including the Helicopter Agreement. As noted by the dissent, Rehco's claims on the Havoc Heli ***were*** a part of the audit process and were, therefore, released as "related to" the Audit. ADD 16.

Additionally, this Court noted in *Augustine* that "it is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement agreement." *Id.*, at 1373. There, the plaintiff had clear knowledge at the time of the Settlement Agreement that the defendant was producing and marketing the products at issue, and this Court found it was plaintiff's responsibility to expressly reserve the issue of possible future patent infringement claims for future resolution. *Id.* Because the plaintiff did not, this Court found those claims were released under the Settlement Agreement. *Id*. This doctrine has been relied upon in numerous decisions involving the interpretation of the scope of a release that includes "related to" language. *See e.g., Taidoc Tech. Corp. v. Diagnostic Devices, Inc.*, Case No. 3:12cv636, 2013 WL 1688030, at *6 (W.D.N.C. 2013) (relying on *Augustine* to find that settlement

agreement released not only actions related to the several claims brought in the first case but actions that are related to claims which could have been brought in the first action); *Holland v. U.S.*, 74 Fed. Cl. 225 (Ct. Cl. 2006) (same).

Likewise, here, it is undisputed that Rehco knew about the Havoc Heli, even going so far as to include claims for royalties in a draft audit report, but it did not expressly reserve any rights to pursue royalties on the Havoc (or any other product) under the Helicopter Agreement at the time the Settlement Agreement was entered. *Contra Bluebonnet Savings Bank, F.S.B. v. U.S.*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (finding subordinated debt claim not barred by earlier settlement agreement because the agreement's mutual release excepted "all claims of CFSB and Fail to the extent they relate to alleged breaches of contract relating to capital forbearances, dividend forbearances, and dividend payments . . .."). Thus, under *Augustine* as applied to the plain language of Rehco's Release, Rehco discharged its claims for royalties on the Havoc Heli. Despite the parties' briefing on *Augustine*, the majority opinion did not mention this precedent, creating conflicting precedent and casting doubt on any Settlement Agreements including similar broad release language. For these reasons, Spin Master requests that the panel rehear and reconsider this issue.

8

## II.    REHEARING EN BANC IS WARRANTED TO ADDRESS THE SPLIT OPINION REGARDING INTERPRETATION OF "RELATED TO" IN RELEASE PROVISIONS

The majority interpreted the phrase "related to the Audit" to narrowly mean only those product SKUs specifically identified in the audit report, and not claims "related to" the Audit. ADD 8-9. This conclusion contradicts precedent from this Circuit, the Supreme Court, and the Seventh Circuit, holding that the phrase "related to" is interpreted broadly. ADD 17[1]. As noted in *Todd Const.*, "related to" has consistently been interpreted broadly, both by the Supreme Court, as well as the Federal Circuit. *Todd Const., L.P. v. U.S.*, 656 F.3d 1306, 1312-13 (Fed. Cir. 2011); s*ee, e.g., Celotex Corp. v. Edwards,* 514 U.S. 300, 307–08, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) (holding that Congress' jurisdictional grant to bankruptcy courts to hear proceedings "related to" a bankruptcy case "suggests a grant of some breadth" and includes, inter alia, suits between third parties which have an effect on the bankruptcy estate); *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383–84, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992) (holding that preemption provision of Airline Deregulation Act—preempting laws "relating to rates, routes, or services"

---

[1] The dissent identifies the following cases interpreting "related to" or "relating to" broadly. *Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378-79 (Fed. Cir. 2009); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 745-46 (7th Cir. 1996); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994).

of any air carrier—should be broadly construed); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) (holding that state law "relates to" an employee benefit plan and is therefore preempted by ERISA "if it has a connection with, or reference to, such a plan"); *Tyco Healthcare Group LP v. Ethicon Endo–Surgery,* 587 F.3d 1375, 1378-79 (Fed. Cir. 2009) ("[i]n general, 'related to' means one thing has some ... connection to another thing," and "[i]n legal parlance," the term has "similar breadth" and interpreting the contractual phrase "related to pending litigation" broadly).

The term "related" is typically defined as "'associated; connected.'" *Todd Const., L.P.*, 656 F.3d at 1312 (citation omitted). Applying that same definition here requires affirming the District Court's conclusion that Rehco released its claims for royalties on the Havoc Heli, where those claims are undoubtedly associated or connected to the Audit, which included an audit of the Helicopter Agreement. In fact, the initial draft of the audit report included claims for royalties on the Havoc Heli under the Helicopter Agreement, indicating that, it was associated with or connected to the audit, and certainly could have been asserted in the Audit. Thus, Rehco released those claims when it released any and all claims "related to" the Audit "which arose existed, or could have been asserted prior to the Effective Date."

The District Court's conclusion, finding that Rehco released its claim for royalties on the Havoc, applied the ordinary understanding of the terms in the

Settlement Agreement, and parties must have confidence in the scope of such terms.

As the Seventh Circuit notes: "[W]e think many defendants would agree that the *most* material term in any settlement agreement is the release." *Higbee v. Sentry Insur. Co.*, 253 F.3d 994, 997-98 (7th Cir. 2001); *see also USA Satellite & Cable, Inc.v. MacNaughton*, Case No. 1:15-cv-6331, 2018 WL 665397, at *3 (N.D. Ill. 2018) (citing *Higbee*). Given courts' long history of interpreting "related to" as a phrase having substantial breadth, parties to a settlement agreement must be able to rely on this previously consistent judicial guidance.

The majority's narrow interpretation of "related to" places potentially numerous settlement agreements and releases containing that phrase in doubt. This is contrary to this Court's precedent, as well as the authority identified in the dissent. Moreover, it calls into the question the ability of parties to negotiate and enforce carefully negotiated settlement agreements, relying on this precedent, to avoid the uncertainties of litigation. *Carson v. American Brands, Inc.*, 450 U.S. 79, 88, 101 S. Ct. 993, 998 (1981) ("Settlement agreements may thus be predicated on an express or implied condition that the parties would, by their agreement, be able to avoid the costs and uncertainties of litigation.").

## CONCLUSION

Because the majority opinion conflicts with the Supreme Court's and this Circuit's interpretation of "related to," creating uncertainty in any number of similar

agreements, Spin Master respectfully requests rehearing en banc to resolve this conflict of authority.

Respectfully submitted,

/s/ Carrie A. Bader
Megan J. Redmond
Eric A. Buresh
Carrie A. Bader
**Erise IP, P.A.**
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600

*Attorneys for Defendant-Appellee*

DATED: March 6, 2019

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**REHCO LLC,**

*Plaintiff-Appellant*

**v.**

**SPIN MASTER, LTD.,**

*Defendant-Appellee*

---

2017-2589

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:13-cv-02245, Judge John Robert Blakey.

---

Decided: February 4, 2019

---

TIMOTHY EDWARD GROCHOCINSKI, Nelson Bumgardner Albritton P.C., Orland Park, IL, argued for plaintiff-appellant. Also represented by JOSEPH P. OLDAKER.

MEGAN JOANNA REDMOND, Erise IP, P.A., Overland Park, KS, argued for defendant-appellee. Also represented by CAROLINE A. BADER, ERIC ALLAN BURESH.

---

Before PROST, *Chief Judge,* DYK and MOORE,
*Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Opinion dissenting-in-part filed by *Circuit Judge* DYK.

PROST, *Chief Judge.*

Plaintiff-appellant Rehco, LLC ("Rehco") sued defend-ant-appellee Spin Master, Ltd. ("Spin Master") for breach of contract and infringement of U.S. Patent No. 7,100,866 (the "'866 patent").[1] The district court granted summary judgment for Spin Master on both claims. Rehco appeals. We vacate the district court's summary judgment and remand for proceedings consistent with this opinion.

## BACKGROUND

### I

Rehco and Spin Master executed a "Radio-Controlled Helicopter Agreement" in 2001. J.A. 1316–31 (the "Heli-copter Agreement"). Under this agreement, Rehco would develop a toy, and Spin Master would have an exclusive license to that toy. Spin Master would pay Rehco royal-ties on sales of the toy. Rehco terminated the Helicopter Agreement in 2008.

An auditor conducted an audit of Spin Master's royal-ty payments to Rehco, and on October 8, 2010, the parties executed a "Settlement and Release Agreement" concern-ing the audit. J.A. 1495–97 (the "Settlement"). The Settlement defines certain terms as follows:

---

[1] Rehco's Second Amended Complaint raised two breach-of-contract claims—one for each of two contracts. In accordance with a stipulated dismissal and the district court's final judgment, only one of those claims is before us on appeal.

A. In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records related to the licenses listed below as referenced by the product SKUs identified in [the auditor's] January 2009 report ("Audit") for the selling periods of Q1 2006 through Q1 2008 ("Audit Period' [sic]); and

B. The Parties wish to settle any disputes relating to the Audit, and further wish to settle any disputes relating to the Audit for selling periods outside the Audit Period through Q2 2010 ("Additional Selling Periods") on the terms and conditions set forth in this Agreement.

J.A. 1495.  The Settlement also states:

Subject to the representations and warranties below, Rehco hereby releases and forever discharges Spin Master . . . from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, which are related to the Audit and Additional Selling Periods, and any claims for royalties thereunder (other than the Spin Master obligations under this Agreement) which arose, existed, or could have been asserted prior to the Effective Date.

J.A. 1496.

## II

The '866 patent is directed to a control system for a flying vehicle.  Rehco defines claims 1, 2, and 3 of the '866

patent as the "Asserted Claims."[2]    Appellant's Br. 11.
Claim 1 is reproduced below:

> 1.  A vehicle having a means for propelling in a
> vertical direction, further comprising:
>
> a transmitter positioned on the bottom of said ve-
>     hicle for transmitting *a signal* from the vehicle
>     downwardly away from said vehicle;
>
> a receiver positioned on the bottom of said vehicle
>     for receiving said signal as it is bounced off of a
>     surface, defined as a bounced signal; and
>
> a control system that automatically sets a speed
>     of the propelling means in response to the re-
>     ceiver, said control system having a first means
>     to set the speed of the propelling means to a
>     first speed when the receiver receives the
>     bounced signal and the control system having a
>     second means to set the speed of the propelling
>     means to a second speed when the receiver
>     does not receive the bounced signal, the first
>     speed being predefined as a speed that causes
>     the vehicle to gain altitude and the second
>     speed being predefined as a speed that causes
>     the vehicle to lose altitude.

'866 patent claim 1 (emphasis added).

### III

The district court granted summary judgment for
Spin Master on Rehco's claims for breach of the Helicopter
Agreement and infringement of the '866 patent.

---

[2]    Rehco agreed that these claims rise and fall to-
gether for purposes of this appeal.  Oral Arg. at 10:49–55,
No.    2017-2589,    http://www.cafc.uscourts.gov/oral-
argument-recordings ("Oral Arg.").

Rehco claimed that Spin Master breached the Helicopter Agreement by failing to pay the required royalties. Relevant here, the parties disputed whether the Settlement precluded Rehco's claim for royalties on the Havoc Heli product. The district court found that because the Havoc Heli was on the market before the audit was initiated, claims on the Havoc Heli "could have been[] asserted" before the Settlement's Effective Date. J.A. 50. The court therefore concluded that the Settlement precluded any claim for royalties on the Havoc Heli. *Id.*

As to Rehco's patent-infringement claim, the district court found it necessary to construe "a signal" to resolve the parties' dispute. The court acknowledged the general rule that use of the indefinite article "a" means "one or more" and that exceptions to this rule are "extremely limited." J.A. 57–58. But it concluded that the '866 patent presented such an exception and construed "a signal" to mean "a single signal being emitted from the transmitter, and not multiple signals." J.A. 61. With this construction, the court concluded that Spin Master's products cannot infringe the '866 patent because all of those products employ multiple signals. *Id.*

The district court also considered another potential basis for granting summary judgment of noninfringement—one based on the "predefined speed" limitation of claim 1. The court noted Spin Master's argument that the accused products "never set a predefined speed that causes the vehicle to either gain or lose altitude." J.A. 62. Although the district court's opinion is unclear on whether it adopted this argument as an alternative basis for granting summary judgment of noninfringement[3]—independent of its construction of "a

---

[3]   Confusion on this point was evident at oral argument. Rehco's counsel at times seemed to concede that the district court found that summary judgment was

signal"—Spin Master advances the same argument on appeal, which we address below.[4]

Rehco appeals the district court's summary judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a grant of summary judgment under the regional circuit's law. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018). The Seventh Circuit reviews summary judgments de novo, asking "whether, if the record of the summary judgment proceeding were the record of a trial, a reasonable factfinder, whether judge or jury, could find in favor of the party opposing the motion." *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996) (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994)).

---

appropriate because the accused products did not satisfy the "control system/predefined speed" limitation. Oral Arg. at 4:40–50; *id.* at 6:15–30. *But cf. id.* at 5:38–6:01; *id.* at 6:31–59. Spin Master's counsel, however, conceded that the opinion does *not* contain a clear statement to that effect. Oral Arg. at 20:30–21:23.

⁴    The district court also noted Spin Master's argument that claim 1 is limited to a "binary control system," under which the vehicle is always moving up or down (unlike Spin Master's characterization of its own products as maintaining the vehicles at a specific height). J.A. 62. In response to a clarifying question from this court, Spin Master's counsel agreed that the issue regarding the control-system limitation is whether the accused products satisfy the predefined-speed limitation of claim 1. Oral Arg. at 21:50–22:15; *id.* at 23:01–23:20 (agreeing that the accused products go up and down based on the receipt or non-receipt of signals, but not based on setting a predefined speed that causes the vehicles to go up or down).

We review the district court's contract interpretation here de novo. *See Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002) (noting that the district court's interpretation of an unambiguous contract is reviewed de novo). We also review claim construction de novo where, as here, the district court considered only evidence intrinsic to the patent. *E.g.*, *Poly-Am., L.P. v. API Indus, Inc.*, 839 F.3d 1131, 1135–36 (Fed. Cir. 2016) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–42 (2015)).

Determining infringement requires two steps: (1) properly construing the claim; and (2) comparing the properly construed claim to the accused product. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011). Infringement is a question of fact. *Id.* at 1129–30. "On appeal from a grant of summary judgment of non-infringement, we determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." *Id.* at 1130.

We discuss Rehco's breach-of-contract and patent-infringement claims in turn.

I

Rehco argues that the district court misinterpreted the Settlement's release language in concluding that the release precluded Rehco's claim for royalties on the Havoc Heli. Rehco's argument relies on the Settlement's definition of Audit and the release language itself. The Settlement defines "Audit" as follows:

> A. In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records related to the licenses listed below *as referenced by the product SKUs identified in [the auditor's] January 2009 report* ("Audit") . . . .

J.A. 1495 (emphasis added).  And the pertinent release language states:

> Subject to the representations and warranties below, Rehco hereby releases and forever discharges Spin Master . . . *from any and all claims*, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, *which are related to the Audit and Additional Selling Periods, and any claims for royalties thereunder (other than the Spin Master obligations under this Agreement) which arose, existed, or could have been asserted prior to the Effective Date.*

J.A. 1496 (emphasis added).

Rehco's argument is straightforward.  According to Rehco, the above-quoted release language did not release Rehco's claims for royalties on the Havoc Heli because (1) the release language only released claims "related to the Audit and Additional Selling Periods, and any claims for royalties thereunder"; (2) "Audit" is a defined term limited to the product SKUs identified in the auditor's January 2009 report; and (3) there is no dispute that the Havoc Heli was not included in the January 2009 report. In other words, Rehco argues that while it released Spin Master from claims "related to the Audit," the Havoc Heli's absence from the auditor's January 2009 report rendered that product not within the scope of how the parties defined "Audit."[5]  Therefore, Rehco contends, it did not release any claim for royalties on the Havoc Heli in the Settlement.  We agree with Rehco's interpretation.

---

[5]    The definition of "Additional Selling Periods" refers to the definition of "Audit Period," which is defined in the same passage as "Audit."  J.A. 1495.

Spin Master argues that Rehco "elected to remove its claims for royalties on the Havoc Heli, and then granted Spin Master a broad release of its claims 'related to' the audit." Appellee's Br. 8. But Rehco did not release its claims related to the audit; it released its claims related to the "*Audit*"—a defined term in the Settlement. Claims "related to" the "Audit," as defined, must necessarily relate to the product SKUs identified in the auditor's January 2009 report.

Spin Master also argues, in line with the district court's conclusion, that Rehco knew about the Havoc Heli before the Settlement's Effective Date and therefore could have asserted royalty claims before then. Appellee's Br. 12–13 (referencing the Settlement's release language). But again, Spin Master's problem is the definition of "Audit." Rehco released Spin Master from claims "related to the Audit and Additional Selling Periods" and "any claims for royalties *thereunder* . . . which arose, existed, or could have been asserted prior to the Effective Date." J.A. 1496 (emphasis added). The "thereunder" in this last clause references the "Audit and Additional Selling Periods," and it is undisputed that the Havoc Heli was not included in the "Audit" as the parties chose to define that term.

Rehco has appealed the district court's summary judgment on its claim for breach of the Helicopter Agreement only as to the Havoc Heli product. Because we conclude that the Settlement did not release Rehco's claims for royalties on the Havoc Heli, we vacate the district court's summary judgment, which was based on a contrary interpretation of the Settlement.

## II

## A

The district court construed "a signal" to mean "a single signal being emitted from the transmitter, and not multiple signals." J.A. 61. This was error.

We have held that "[a]s a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'" *E.g.*, *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (quoting *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008)). "The exceptions to this rule are extremely limited: a patentee must evince a clear intent to limit 'a' or 'an' to 'one.'" *Id.* (quoting *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). "That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention." *Baldwin Graphic*, 512 F.3d at 1342. Importantly here, "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *O1 Communique*, 687 F.3d at 1297 (quoting *Baldwin Graphic*, 512 F.3d at 1342).

Spin Master suggests that a later reference to "a signal" in claim 1—namely, "a receiver positioned on the bottom of said vehicle for receiving *said* signal as *it* is bounced off of a surface"—shows a clear intent to limit "a" to "one." *See* Appellee's Br. 33 (emphasis altered) (quoting '866 patent claim 1). Spin Master further suggests that if the claim had said "they" instead of "it," this would have allowed for a plural interpretation. *Id.* But if the definite article "a" can—indeed, usually does—refer to "one or more," so would the pronoun "it" when referring back to the term that was used with the definite article. *See O1 Communique*, 687 F.3d at 1297 (observing that "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not

change the general plural rule, but simply reinvokes that non-singular meaning"); *id.* ("The patent's use of words such as 'a,' 'its,' and 'the' in the claims is insufficient to limit the meaning of 'locator server computer' to a single physical computer."). Using the pronoun "it," which is entirely consistent with using the term "a signal," hardly demonstrates a clear intent to depart from the general rule.

In construing "a signal" to mean a single signal, the district court likewise relied on later references to "a signal" in claim 1. For example, the court noted that "[t]he claim language specifies that the bounced signal . . . is the same signal that is transmitted downwardly away from the vehicle." J.A. 59. Claim 1 does recite "receiving said signal as it is bounced off of a surface, defined as a bounced signal" and later refers to receiving or not receiving "the bounced signal." '866 patent claim 1. But this observation is irrelevant to whether "a signal" should be limited to a single signal, given that using definite articles "the" or "said" to refer back to the same claim term simply reinvokes the term's non-singular meaning. *O1 Communique*, 687 F.3d at 1297.

We have considered Spin Master's other claim-construction arguments and find them unpersuasive. Consistent with the general rule governing the words "a" or "an," we construe "a signal" to mean "one or more signals."

B

The district court based its summary judgment largely, if not entirely, on its construction of "a signal" as meaning "a single signal being emitted from the transmitter, and not multiple signals." Our modification of the court's construction necessitates vacating the district court's summary judgment of non-infringement.

In doing so, however, we note that the briefing and oral argument in this case has revealed a disagreement between the parties as to what would be required to satisfy claim 1's predefined-speed limitation, which reads: "the first speed being predefined as a speed that causes the vehicle to gain altitude and the second speed being predefined as a speed that causes the vehicle to lose altitude." '866 patent claim 1. For example, Spin Master cites record evidence indicating that in response to the receipt or non-receipt of signals, its accused products adjust power delivered to the motor by a predefined percentage—and that the adjustment is proportional to the current battery power, which itself is subject to change as the battery drains. Appellee's Br. 6–7. Thus, Spin Master concludes that "the accused products do not set predefined speeds that cause the vehicle to gain or lose altitude." Appellee's Br. 7. Rehco, for its part, argues that claim 1 "does not require that the first and second speeds be specific numerical speed values. Rather, they simply have to be speeds that will cause the vehicle to gain (first speed), or lose (second speed), altitude." Appellant's Br. 49 (citations omitted). Replying to Spin Master's battery-drain argument, Rehco argues that "at least sometimes (*e.g.*, when the batteries are fully charged), the accused products are set to a speed that will cause them to gain altitude (first predefined speed), or a speed that will cause them to lose altitude (second predefined speed)." Appellant's Reply Br. 23.

On remand, the district court should consider in the first instance whether the parties' disagreement reflects an actual dispute over claim construction and, if so, how to resolve that dispute.

## Conclusion

For the foregoing reasons, we vacate the district court's summary judgment and remand for proceedings consistent with this opinion.

## VACATED AND REMANDED

<small>COSTS</small>

Costs to Rehco.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**REHCO LLC,**

*Plaintiff-Appellant*

**v.**

**SPIN MASTER, LTD.,**

*Defendant-Appellee*

---

2017-2589

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:13-cv-02245, Judge John Robert Blakey.

---

DYK, *Circuit Judge*, dissenting-in-part.

Although I agree with the majority as to Rehco's patent infringement claim, I respectfully dissent from the majority's resolution of Recho's breach of contract claim.

The question is whether Rehco's breach claim is barred by a 2010 Settlement Agreement ("Settlement Agreement") between the parties. The background of that agreement is as follows. In 2001, Rehco and Spin Master executed the Helicopter Agreement, pursuant to which Rehco agreed to develop toy helicopters and license both the toys and "the subject matter of all patents and patent

applications filed or to be filed on the" toys to Spin Mas-
ter. J.A. 1319. Spin Master agreed to pay Rehco a royalty
fee based on the number of toys sold. The parties now
disagree as to the amount of royalties due under the
Helicopter Agreement. Rehco's breach claim in this action
is for unpaid royalties under the Helicopter Agreement.

Spin Master's defense is that Rehco's claim is barred
by the Settlement Agreement. The Settlement Agree-
ment provides:

> Rehco hereby releases and forever discharges Spin
> Master . . . from any and all claims, counter-
> claims, demands, damages, debts, liabilities, ac-
> counts, actions and causes of action, known or
> unknown, liquidated or contingent, which are re-
> lated to the Audit . . . and any claims for royalties
> thereunder . . . which arose, existed, or could have
> been asserted prior to the Effective Date.

J.A. 1496 (emphasis added). The definition of "Audit"
appears earlier in the Settlement Agreement:

> A.  In January of 2009, at the request of Rehco
> [the auditor] conducted an audit of Spin Master's
> royalty accounting records related to the licenses
> listed below as referenced by the product SKUs
> identified in [the auditor's] January 2009 report
> ("Audit") for the selling periods of Q1 2006
> through Q1 2008 ("Audit Period' [sic]); and
>
> B.  The Parties wish to settle any disputes relat-
> ing to the Audit . . . on the terms and conditions
> set forth in this Agreement.

J.A. 1495 (emphasis added).

The majority concludes that "[c]laims 'related to' the
'Audit,' as defined, must necessarily relate to the prod-
uct[s] . . . identified in the auditor's January 2009 report,"
and since the Havoc Heli is not one of the products identi-

fied in the January 2009 report, "the Settlement did not release Rehco's claims for royalties on the Havoc Heli." Majority Op. at 9.  I think the majority's construction of the agreement is incorrect.

First, the term "Audit" is not limited to items appearing in the January 2009 report.  If the parties had intended the term "Audit" to be limited to the audit report, they would have used the term "Audit Report" instead of "Audit."  On its face, the term "Audit" refers to the described "audit of Spin Master's royalty accounting records."  J.A. 1495.  And so the term "Audit" covers claims for unpaid royalties on the Havoc Heli because those claims were part of the audit process.

The Helicopter Agreement gave Rehco the right to hire an independent auditor "to examine and copy [Spin Master's] books and records respecting [sic] the manufacture and sales of the Licensed Products."  J.A. 1321.  In 2008, Rehco exercised its right under the Helicopter Agreement to hire an independent auditor "to conduct an audit of royalties paid and owed by Spin Master" under the Helicopter Agreement, among other licenses.  J.A. 48.  A draft audit report dated July 11, 2008, included claims for unpaid royalties on the Havoc Heli.  Some time thereafter during the course of the audit, Rehco told the auditor to remove the claims for royalties on the Havoc Heli from the draft report.  Consequently, claims for royalties on sales of the Havoc Heli were not listed in the auditor's final January 2009 report.  I think that the term "Audit" on its face encompasses any claim that was part of the audit, even if it was later removed from the final report.

Second, even if Rehco had effectively removed its claims for Havoc Heli royalties from the audit, the Havoc Heli claims are still "*related to* the Audit."  The "related to" language of the Settlement Agreement "itself is a term of substantial breadth."  *Todd Constr., L.P. v. United*

4                    REHCO LLC v. SPIN MASTER, LTD.

*States*, 656 F.3d 1306, 1312–13 (Fed. Cir. 2011).  "The Supreme Court has interpreted the term 'related to' broadly."  *Id.* at 1312 (collecting cases).  Our court and other courts have similarly interpreted contractual provisions containing the terms "related to" or "relating to" broadly.  *See, e.g.*, *Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378–79 (Fed. Cir. 2009); *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 745–46 (7th Cir. 1996); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994).

For example, in *Tyco Healthcare*, we declined to read the contractual language "[a]ny and all patents and patent applications *relating to* any pending litigation" as limited to "patents asserted in a pending litigation or patent applications in the same family as an asserted patent."  587 F.3d at 1377–78 (emphasis added).  Rather, we read the contractual phrase to cover patents or patent applications that "could have been reasonably asserted in or affected by litigation pending at the time."  *Id.* at 1379.

The Settlement Agreement is at least ambiguous as to whether it covers the Havoc Heli claims.  At a minimum, I would vacate the district court's decision in this respect and remand to allow the parties to present extrinsic evidence as to the parties' understanding of the scope of the Settlement Agreement.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on March 6, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

Dated:  March 6, 2019            /s/ Karen R. Taylor
                                Karen R. Taylor
                                Gibson Moore Appellate Services, LLC
                                206 East Cary Street
                                Post Office Box 1460 (23218)
                                Richmond, VA  23219
                                (804) 249-7770 – Telephone
                                (804) 249-7771 – Facsimile
                                karen@gibsonmoore.net

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Federal Circuit Rule 35(d) and Fed. R. App. P. 35(b)(2) because:

    this brief contains <u>2,733</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 35(c)(2).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in proportionally space typeface using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.


Dated: March 6, 2019

*/s/ Carrie A. Bader*
Megan J. Redmond
Eric A. Buresh
Carrie A. Bader
**Erise IP, P.A.**
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600

*Counsel for Defendant-Appellee,*
*Spin Master, Ltd.*